## C. Hasselmeyer v. The State.

1. Constitutional Law—Title of an Act.—The prevention of imposition upon the legislature, by the insertion in an act of provisions not indicated by its title, was one of the leading purposes of the 17th section of Article 12 of the Constitution of 1869, which required an act to embrace but one object, and that object to be expressed in the title of the act.

2. Same.—Section 18, Article 12, of the Constitution of 1869 ordained that no act should be revised or amended by reference to its title, but that the act revised or section amended should be reënacted and published at length. This provision prohibited the legislature from revising or amending an act by merely referring to its title, and stating wherein the act was to be amended, without publishing it in full as amended. In other words, the provision required that the act, as amended, should be an entirety in and of itself, and should be published *in extenso*, as thereafter to be read and understood.

3. Same—Theft of Cattle.—The act of May 17, 1873, entitled "An act to amend Article 766 of the Penal Code," which prescribed the penalty for cattle theft, is not obnoxious to the prohibitions contained in either of the constitutional provisions above referred to.

4. Practice—Organization of Petit Jury.—The accused moved in arrest of judgment on the ground that the names of the jurors were not drawn by the clerk, as required by the jury law, but were drawn by the judge. *Held*, that the objection should have been made by challenge to the jury when impaneled, and is not available by motion in arrest or for a new trial.

5. New Trial.—The evidence inculpating the accused, on his trial for theft, was that of two witnesses, one of whom was not only contradicted in material respects, but stultified himself as a willful perjurer, and the other of whom may himself have been criminally implicated in the theft. After conviction the accused moved for a new trial, alleging surprise at the testimony of the said witnesses, and showing by affidavits that he had good reason to rely on their evidence to exonerate him. *Held*, under all the circumstances of the case, that a new trial should have been granted.

Appeal from the Criminal District Court of the county of Galveston. Tried below before the Hon. Gustave Cook.

The indictment charged the accused and one Godfrey Young with the theft of a steer and two cows, which, on the 9th of August, 1875, were, on search warrant, found in the stable of the appellant, fastened up. A severance was

allowed on the sworn application of the appellant, who therein alleged that his co-defendant, Young, was a material witness for him; that he believed there was no evidence against Young, and prayed that Young be first put upon trial.

Subsequently the case was dismissed as against Young, and he was one of the two principal witnesses used by the state at the trial.

In view of the rulings made by this court, there appears to be no occasion to detail the evidence in the cause. Such portions of it as are material are sufficiently indicated in the opinion.

The jury found the appellant guilty, and assessed his punishment at two years' confinement in the penitentiary. He moved in arrest of judgment and for a new trial on the grounds noticed in the opinion, and strongly fortified by sundry affidavits; and, both motions being overruled, he appealed.

*Wheeler & Rhodes*, for the appellant, filed an argument of great ability, discussing the entire case, upon the facts as well as the law. Their review of the evidence is too elaborate for insertion, but space is made for their views upon some of the legal questions, as follows:

Ours is a government of law, with the law-making power vested in an individual department of the state, restricted in the exercise of those powers by a written fundamental law, "the Constitution."

By an unconstitutional law we mean one which, being "opposed to the fundamental law, is, therefore, in excess of legislative authority, and void."

The act of the legislature approved May 17, 1873, is as follows:

"An act to amend Article 766 of the Penal Code.

"Section 1. Be it enacted by the legislature of the

state of Texas, that Article 766 of the Penal Code be, and the same is hereby, amended so as hereafter to read as follows" (here follows the amendments, for which we refer to the statute).

Sections 17 and 18, Article 12, of the Constitution of A. D. 1870 (the one in force at the time of passage of this act, and the same provisions are to be found in all the Constitutions) are as follows:

"Sec. 17. Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title.

"Sec. 18. No law shall be revised or amended by reference to its title; in such cases the act revised or section amended shall be reënacted, and published at length."

It is plain, 1st. The object of this act is not expressed in its title; the object being the punishment of theft of cattle, or affixing the penalty—a new penalty—for the theft of cattle. 2d. The law (Art. 766 of the Code) is revised and amended by reference to its title, and the amended section is not reënacted, etc. Now, are these provisions of the Constitution mandatory or merely directory?

If mandatory, then the act of the legislature is absolutely unconstitutional and void. If directory, then they are to be considered as giving such directions as ought to be followed, but not forbidding the exercise of the power without their observance. Judge Cooley, in his most valuable work on Constitutional Limitations, used the following language: (No law, etc., says our Constitution). "But this rule presupposes that no negative words are employed in the statute which expressly, or by necessary implication, forbid the doing the act at any other time or in any other manner than as directed. Even as thus laid down and restricted, the doctrine is one to be applied with much circumspection; for it is not to be denied that the courts have sometimes, in their anxiety to sustain the proceedings of

careless or incompetent officers, gone very far in substituting a judicial view of what was essential for that declared by the legislature.

"But the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of the Constitution (and we say especially in the construction of penal statutes). Constitutions do not usually undertake to prescribe mere rules of proceedings, except when such rules are looked upon as essential to the thing to be done, and they must then be regarded in the light of limitations upon the power to be exercised." See able discussion which follows.

Chief Justice Hemphill, in his opinion in the case of *Cannon* v. *Hemphill*, 7 Texas, 208, in discussing the constitutionality of sections 24, 25, of Article 7, of the Constitution of 1845, which are identical with the sections of the Constitution of 1870 under consideration, says: "Such is the inevitable result of the constitutional provision, and such its force and effect, if it be mandatory, and not directory, in its character. The consequences of such a restriction on legislative discretion and power, of the application of such a test of the validity of special provisions, years, nay ages, after their passage, and after rights under them have accrued, may be inconvenient and destructive. But such results were for the consideration of the convention, and in their wisdom such restriction was deemed salutary and proper. It would be irrational to suppose that this provision of the Constitution is merely a directory one, which may be obeyed or disregarded at the will or caprice of the legislature. Under such construction it would be shorn of strength and efficiency—would become a dead letter, an excrescence in the Constitution."

Can it be said that the provisions of section 18 are merely directory when the sentence " *no law* " opens with a word

of denial, the most positive and the boldest expression of negation known to the language, and employed in a manner— the beginning of the sentence—which renders its negative signification most emphatic; and shall this be the construction of the Constitution when it is invoked for the personal liberty of the citizen? We say no, not while lawyers and jurists sit upon the appellate bench in Texas. But let us for a moment look at the present Constitution, and see the result of a construction of similarly constituted provisions of that instrument different from that for which we contend:

Sec. 14 is in the following words: *No* person, for the same offense, shall be twice put in jeopardy of life and limb, etc.

Sec. 18. *No* person shall ever be imprisoned for debt.

Sec. 20. *No* person shall be outlawed, etc.

Sec. 25. *No* soldier shall in time of peace, etc.

And very many other provisions throughout the entire instrument, not excluding " general provisions," Article 16.

Will it be contended that the legislature, under some circumstances determinable at legislative will, may, by legislative enactment, provide that a person may for the same offense be twice put in jeopardy of life or liberty? that bills of attainder, *ex post facto* laws, laws impairing the obligations of contracts, may be passed? that a person may be outlawed for crimes committed within the state? that in time of peace soldiers may be quartered in the house of a citizen without his consent?

Would it be any greater or different assumption of power, on the part of the legislature, to pass laws disregarding these provisions of the Constitution, than those forbidding the passage of laws as in these provisions indicated? Is the expression of the will of the people in the organic law less positive in the one instance than in the others?

That government cannot be said to be free when the rights of property, life, and liberty are left solely dependent

upon the will of a legislative body without any restraint. And, when these fundamental principles are violated, it is to the courts of the country the citizen must look for protection. These are sacred deposits in judicial hands, not to be disregarded by legislative caprice or ignorance; not to be fashioned by any judge's private opinion, or moulded by the " circumstances surrounding the case."

If, therefore, a constitutional provision is to be enforced at all, it must be treated as mandatory. It follows, then, if our conclusions are correct as to the unconstitutionality of the law of 1873, that that portion of the charge of the court based upon this statute is erroneous, and not the law of the case as made by the record.

Section 22, p. 82, General Laws, 1876 (act regulating juries), provides: " In all cases of jury trial the clerk shall draw from the box the names of twenty-four jurors," etc. ; he shall then make two lists, hand one to the prosecuting attorney, and the other to the defendant or his attorney.

The legislature, looking to the acknowledged defects in the old law, in view of the misfortunes and errors of the past, and aiming at a rigid enforcement of the law, for the good of the state, but not unmindful of the rights and liberties of their people, have with great care and circumspection, and, we believe, in the estimation of our profession, with no little wisdom, prescribed this mode for the selection and impaneling of a jury to try a prisoner of this state. And is not the mode the "measure of the power?" And is a jury selected by any other mode—be it by the hand of the judge, the sheriff, the prisoner, the prosecuting attorney, or a by-stander and a stranger—a legally constituted jury? And if the law in this particular is not mandatory, and this provision of the statute can be disregarded, and the jury drawn by the hand of the judge, why not by that of the prosecuting attorney, or the prisoner himself, or why drawn at all? Why not selected by the prisoner from the group

of his anxious friends who crowd the bar of justice, earnestly hoping an acquittal, or from the prosecutors who sit "within," impatiently awaiting his conviction?

We impute no improper motives or intentional want of fairness to the learned and respected judge who tried this cause in the court below; but it was a mistake, a serious mistake—none the less dangerous because unintentional— breaking down one of those barriers which guard the purity of the jury-box, and in his footsteps this court will be slow to follow.

But it is said to the prisoner and his counsel: "You were silent; you made no objection at the time; you stood by and saw this done." True, but did this repeal the statute? Does the doctrine of estoppel apply to jury trial in felony cases? Can a trial by a jury of "the law," in felony cases, be waived?

But let us go further. Suppose we had agreed to arbitrate this matter between the state and the prisoner, and twelve men, "good and true," had been selected by the parties, who, upon a full hearing, had found the defendant guilty of the charge, and fixed his punishment at two years' confinement in the state's penitentiary; would his honor, the district judge, have rendered judgment upon this award, and would this court have affirmed it?

What is a jury?

"A number of freeholders selected in the manner prescribed by law," etc. Webster's Dictionary.

"A common jury is one returned by the sheriff according to the directions of the statute." 3 Black. 358.

"By a jury is understood a body of twelve men selected according to law." 3 Bouv. Ins. 327.

"The jurors for the trial of civil cases are selected by officers designated by the statutes of each state." Ib. 329.

We hold it a most sacred constitutional right of every citizen accused of a crime to be tried, aye, convicted,

according to the law of the land—the "fixed law of the land;" and when the Constitution declares he shall have a fair and impartial trial by a jury of the country, that he shall not be deprived of life or liberty without due course of law, does it mean by this that in criminal trials the forms of the law may be dispensed with, and he be deprived of the usual legal modes of trials instituted for the preservation of that very liberty?

*George P. Finlay & Brother*, of counsel for the State, filed a concise but cogent reply.

WHITE, J.   It is earnestly insisted that the statute under which the indictment in this case was found is obnoxious to constitutional objections in two respects.   That law reads as follows :

"An act to amend Article 766 of the Penal Code.

Section 1. Be it enacted by the legislature of the state of Texas, that Article 766 of the Penal Code be, and the same is hereby, amended so as to read as follows :

"Article 766.   If any person shall steal any cattle, he shall be punished by confinement in the penitentiary not less than two nor more than five years."

It is unnecessary to copy the other portions of the Article. This act was approved May the 17th, 1873, and is to be found in the acts of the thirteenth legislature (Pamphlet Laws, 80).   The two clauses of the Constitution of 1870 to which it is claimed that this act is repugnant are the following, viz. :

"Article 12.   General Provisions.   Sec. 17. Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title.

"Sec. 18. No law shall be revised or amended by reference to its title, but, in such cases, the act revised or section amended shall be reënacted, and published at length."

In so far as the objection has reference to the 17th section,. above quoted, we apprehend it does not present a new or open question.    The opinion of the learned chief justice of our supreme court in the case of *The State* v. *McCracken*,. in construing this constitutional provision in connection with an act similar in its caption to the one we are considering,. holds the following to be the correct doctrine :    " As to whether this provision is mandatory, or only directory, to the legislature, has been decided differently by different states. in which it has been adopted.    Cooley on Const. Lim. 141 ; Sedgw. on Const. and Stat. Law, 53, 55, 68.    In the case of. *Cannon* v. *Hemphill*, Chief Justice Hemphill says, speaking of this section :   ' It would be irrational to suppose that this provision of the Constitution is merely a directory one, which may be obeyed or disregarded  at the will or caprice of the legislature.'   7 Texas, 208 ; also, see *San Antonio* v. *Gould*,. 34 Texas, 49.    One of the leading objects of this provision,. as shown by all of  the authorities, is  to prevent surprise,. misapprehension, or deception upon the legislature and upon the public by the insertion in the act of something that. would not be indicated in the title of the act.    That was. one of the principal evils that led to its adoption.    *Tadlock* v. *Eccles*, 20 Texas, 782.    Now, can    *    *    *    this (amendment) take any one by surprise, or mislead any one as to the object or application of the amendment?    We think not.    Texas never had but one ' Penal Code,' in the sense conveyed in  this title, and that was approved on the 26th of August, 1856 ; and it has been amended continually ever since its adoption by referring to it, in the titles of the amendatory acts, as  the  Penal Code, not meaning thereby generally a body of criminal laws in force in the state, but specially the Penal Code that was adopted as one act of the legislature, and which was approved on the 26th of August, 1856.    The leading object, as expressed in this title, was the amendment of the Penal Code, there being but one such,

according to the understanding of all persons who under-- stood anything about it; * * * and, therefore, no one could be misled by it to his prejudice." 42 Texas, 383.

In so far as the objection involves section 18, above quoted, it is equally as untenable. The true meaning and construction of that section is simply this : The legislature· was to be prohibited, in passing an amendment to, or in revising, any law, from doing so solely by referring to the· title of the act, and stating wherein it was to be amended,. without publishing at length the law as amended.

For instance, as an illustration, let us take the act objected to in this case. This clause of the Constitution inhibited the legislature from saying that "theft of cattle" (supposing that to be the title of the act) should be, and was, amended by leaving out hereafter the words "sheep, goat, or hog;" and it also prohibited the legislature from amending the act by simply declaring that "Article 766 of the Code was amended by hereafter omitting the words 'sheep, goat, or hog;'" but that, whenever they desired or intended to amend or revise a law, they could only do so· by publishing the whole act or Article in the language, full and complete, in which it was thereafter to be read and understood. In other words, the amendment was to be an entirety of and within itself.

The parts of the law which it was, and is, intended by· the Constitution should be reënacted in full and at length are those parts of the old law which are intended to be· retained in connection with, and as parts and parcels of, the new law. This the legislature did in the amendment complained of, as will be seen by comparing the amended law,. as set out above, with Article 766 of the Penal Code, which is in these words : "If any person shall steal any neat. cattle, sheep, goat, or hog, he shall be punished by confine-- ment in the penitentiary not less than two nor more than. five years." Pasc. Dig., Art. 2410.

In the view we have taken, and the conclusion we have arrived at, in this case, we do not deem it necessary to discuss and determine the many interesting points so ably argued in the briefs of the appellant's counsel and the learned counsel for the state, and exhibited as incidents of the trial by appropriate bills of exception, and in the motion for a new trial, the motion in arrest of judgment, and in the assignment of errors. Most of them are not likely to arise upon another trial.

In passing, however, to the points upon which we propose to determine the case, we will notice some of the prominent grounds complained of, so far as to remark:

1st. That the charge of the court, in our opinion, was a fair, full, and able exposition of the law applicable to the facts proved, and we find no error in the refusal to give the special instructions asked by defendant.

2d. The objections to the mode and manner of drawing the jury should have been made by challenge at the time, and cannot be taken advantage of on a motion for new trial or in arrest of judgment.

3d. Many of the facts stated in the affidavits in support of the motion for a new trial, especially those relating to contradictory statements made by the witnesses, should have been elicited on the trial, in order that the jury might have been enabled to have passed upon them, in connection with the other facts in the case, in determining what weight should be given to the testimony.

Taking the whole case, as shown to us by the facts upon which this conviction rests, and we are of opinion that there is a deficiency in the evidence adduced of that certain, and satisfactory, and convincing character which is necessary to establish the guilt of the accused beyond a reasonable doubt.

We imagine that the history of jurisprudence will be searched in vain for an example of perjury more reckless

in its daring, or unblushing in its boldness and effrontery,. than that exhibited in this case by the witness Alexander· White. He stands, not only confessed, but most solemnly condemned, out of his own mouth, as having willfully and deliberately sworn falsely as many as three times during· the progress and investigation of this case ; and, moreover,. other material portions of his testimony are positively and emphatically contradicted by the solemn affidavits of parties; to verbal statements made them out of court, under circum— stances peculiarly addressing themselves to his sense of truth and justice, in regard to this transaction.

The only other witness connecting the defendant directly ·with the theft of the animals charged is one from whose· connection with the transaction we do not feel at liberty to. say that he should not be considered by us in the light of an accomplice. If he is to be considered as an accomplice, then a conviction could not be had upon his testimony, unless it was corroborated by other evidence tending in· some material matter to connect the defendant directly with the commission of the offense. *Irwin* v. *The State*, Tyler· term, 1876, citing *Wright* v. *The State*, 43 Texas, 170.

The fact that the cattle were found by the officer, closely· barred and confined in appellant's stable, without explana-. tion on his part, though of importance as a circumstance, still we do not think is of itself sufficient to establish his guilt, when there is a doubt thrown upon the fact as to. whether or not defendant was on his premises at all from, at, and before the time the animals were penned until after· they were discovered concealed in the stable. If he was. not there during that time, it is certain that he could neither· have aided in the penning, in the first instance, nor have par—. ticipated in hiding them in the stable, in the second. And if he was at Bryan's place, twelve miles away, and remained, there till Monday evening, after the cattle were found in the· stable, there is nothing to connect him with the taking at,

all, because the evidence tends to show that the cattle were taken, or got into the herd, on the way up from Bryan's to the house of the defendant. The defendant says that he calculated with certainty upon proving these exonerating facts by both the witnesses, White and Young, and shows good reasons why he entertained these expectations in his motion for a new trial. He claims that a new trial will enable him to establish these facts.

Taking the whole record of this most extraordinary case, as submitted to us, we do not feel that we would be justified in sanctioning a conviction upon the testimony before us, especially when we are inclined to believe that another investigation will be more satisfactory and conclusive in fully developing all the matters necessary to render certain the doubtful and uncertain circumstances surrounding it at the present time.

For the reason that the court below refused to grant a new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*